## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **JERRI TODD,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **vs.** | : | **CASE NO: _____** |
| | : | |
| **FAYETTE COUNTY SCHOOL** | : | |
| **DISTRICT;** | : | |
| | : | |
| **Defendant** | : | |

## <u>COMPLAINT</u>

COMES NOW, Jerri Todd ("Ms. Todd" or "Plaintiff"), Plaintiff herein, by and through her undersigned counsel of record, and hereby files this Complaint against the Fayette County School District ("Defendant" or "District ") and shows this Court as follows:

## <u>NATURE AND PURPOSE</u>

1.

This is a lawsuit brought due to disability discrimination and retaliation in violation of Title II of the Americans with Disabilities Act, as amended by the Americans with Disabilities Act Amendments Act ("ADA") and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. 794 and 42 U.S.C. 2000d-7 ("Section 504") and the Family and Medical Leave Act, 28 U.S.C. Section 2601, et seq. Plaintiff

has filed a Charge of Discrimination with the Equal Employment Opportunity Commission under Title I of the Americans with Disabilities Act, as amended by the Americans with Disabilities Act Amendments Act (hereinafter collectively "ADA") and will amend this Complaint upon receipt of her Notice of Right to Sue.

## THE PARTIES

2.

Ms. Todd is an individual residing in the Atlanta Division of the Northern District of Georgia.

3.

Defendant District is a public school District organized under Georgia law and is a local governmental entity providing public services within the boundaries of the Atlanta Division of the Northern District of Georgia.  Defendant may be served by personal service on its Superintendent, Joseph (Jody) C. Barrow, Jr., at his place of employment, 210 Stonewall Avenue West, Fayetteville, GA 30214.

## JURISDICTION AND VENUE

4.

This Court has subject matter jurisdiction, inter alia, pursuant to 28 U.S.C. § 1331 and 1343, as the case presents a federal question and seeks to address violations of civil rights.

5.

Venue is proper in this Court.  Defendant is a local unit of government located in this District and Division and the discriminatory acts alleged herein are alleged to have taken place in the Atlanta Division of the Northern District of Georgia, such that venue is proper in this Court.

## STATEMENT OF FACTS

6.

Plaintiff is an employee of the Fayette County School District, although Defendant is not permitting her to return to work.

7.

During the time period of the actions set forth in this Complaint, Defendant employed Plaintiff as a 6-8th grade art teacher.

8.

Plaintiff suffers from major depressive disorder and an anxiety disorder, which she had disclosed to her Principal, Connie Baldwin, in or about September of 2011.

9.

In January of 2017, Plaintiff began experiencing symptoms of depression. She was seeing a therapist on a weekly basis and had scheduled appointments with her therapist for January 23 and January 24, 2017.

10.

On January 23, 2017, during their planning period, Plaintiff discussed with Katy Sweat and Deanise Myers, two fellow teachers, the fact that she had a therapy appointment.

11.

Ms. Myers repeatedly questioned Plaintiff about the details of her psychological condition, her thoughts, feelings, and emotional state.

12.

After repeated questioning by Ms. Myers, Plaintiff disclosed to Ms. Myers that she had recently had suicidal ideations, which was the reason she felt it necessary to see a therapist.

13.

She told Ms. Myers that she knew that these thoughts were not right and did not want to act on those thoughts and was therefore seeking help.

14.

At no point did Plaintiff have an actual intention to commit suicide or to harm anyone else.

15.

At no point did Plaintiff even indicate that she had had thoughts about harming anyone at work.

16.

Approximately an hour and a half after this conversation, the School Resource Officer, Lawrence Vasquez, came to see Plaintiff and asked her to come with him.  He stated, "It is one thing to threaten to harm yourself.  It is another to threaten to harm your kid."

17.

Plaintiff asked Mr. Vasquez, "What are you talking about?"  Mr. Vasquez then began questioning Plaintiff about what medication she was taking.

18.

Plaintiff informed Mr. Vasquez that she was taking the medication prescribed to her in the amount and as prescribed.

19.

When Plaintiff asked Mr. Vasquez why he was questioning her, he threatened to put her in handcuffs.  As a result, Plaintiff felt that she was being detained and had no choice but to remain with Vasquez, despite the fact that she was in the middle of class.

20.

Thereafter, Plaintiff's Principal, Connie Baldwin, joined the conversation, at which time Plaintiff told her that she had a therapy appointment that afternoon.

21.

Plaintiff told Ms. Baldwin that Ms. Baldwin knew why Plaintiff was seeing the counselor.

22.

Ms. Baldwin told Plaintiff that she was not going to be permitted to drive herself, despite the fact that Plaintiff was unimpaired, had not been given a field sobriety test, and there was no evidence that she was unable to drive.

23.

Ms. Sweat agreed to drive Plaintiff to her therapy appointment.  At the conclusion of her appointment, Plaintiff asked her therapist if she needed to be committed to the hospital.

24.

In front of Ms. Sweat, Plaintiff's therapist told Plaintiff that Plaintiff could go home.

25.

Ms. Sweat drove Plaintiff back to school, so that she could get her car and her son.

26.

Plaintiff began looking for her son and could not find him.

27.

At this point, the School Resource Officer met Plaintiff and told her that DFACS had her son.

28.

Mr. Vasquez told Plaintiff to come with him or he would put her in handcuffs.

29.

Plaintiff went with Mr. Vasquez to his office.  Plaintiff told him that she was not going to speak to him, but would only speak to her Principal.  Mr. Vasquez left.

30.

While Plaintiff was in Mr. Vasquez office, Defendant's agents (Sam Sweat, Deanise Myers, and Connie Baldwin and possibly Natalie Grubbs) as well as representatives of DFACS questioned Amy Cannady, a high school teacher and friend of Plaintiff's, about Plaintiff's mental and emotional state.  Ms. Cannady told them that Plaintiff was fine.

31.

Plaintiff told Ms. Baldwin privately that she was going to therapy, that Ms. Baldwin knew that Plaintiff was getting the help she needed, and asked Ms. Baldwin why she was taking the actions described above.

32.

Ms. Baldwin did not explain her actions.

33.

Plaintiff was then required to sign a letter permitting Ms. Cannady to take Plaintiff's son home.

34.

Plaintiff was then allowed to leave Mr. Vasquez office and was asked some questioned by Mr. Jeff Patterson, Assistant Principal.

35.

Mr. Vasquez told Plaintiff that she was going to the hospital.   Plaintiff objected and told him that she was fine.

36.

Plaintiff was prevented from leaving and was ultimately taken to the hospital at Defendant's insistence, under threat of arrest and/or termination.

37.

Plaintiff was at the Emergency Psych Ward of Fayette Piedmont Hospital for a day and a half, at which point she was transferred to Lakeview Behavioral Health.  Initially, Plaintiff's therapist objected to Plaintiff's hospital, until she was contacted by Defendant and, as a result, she felt that she had to agree to Plaintiff's admission or Defendant would fire her.

38.

Plaintiff was at Lakeview Behavioral Health, where she was prescribed medication, and was released in three and one half days, on January 28, 2017.

39.

Plaintiff was out of work as a result of a serious health condition for a period of over three days, which period included hospitalization, such that Plaintiff's absence was covered under the Family and Medical Leave Act.

40.

On Monday, January 30, 2017, Plaintiff received a release from Lakeview Behavioral Health, permitting her to return to work without restriction.

41.

On January 31, 2017, Plaintiff received a release from her treating Psychologist, permitting her to return to work without restriction.

42.

Plaintiff brought the releases to Erin Roberson, Director of HR for Defendant, on February 1, 2017.

43.

Instead of returning Plaintiff to work, Ms. Roberson told Plaintiff that they were going to have to think about what to do about Plaintiff's job.

44.

Defendant did not request a second opinion to determine if Plaintiff was capable of returning to work and, instead, told Plaintiff that she would either need to resign or be terminated.

45.

As a result of Defendant's refusal to return her to work, Plaintiff requested FMLA leave, during which she has, on several occasions, sought to return to work, including submitting an additional release from her psychologist.

46.

Defendant has continued to refuse to return Plaintiff to work, notwithstanding Plaintiff's medical certification that she is able to return to work without limitation.

47.

On February 1, 2017, Defendant, through a memorandum from Ms. Baldwin, notified parents that Plaintiff was on a temporary leave of absence through approximately April 28, 2017 and that they looked forward to Plaintiff's return to work.  However, when Plaintiff – individually and through counsel – has requested to return to work, she has been threatened with termination.

48.

On April 18, 2017, Plaintiff executed a Charge of Discrimination under the Americans with Disabilities Act and promptly filed such Charge with the EEOC. Plaintiff will amend this Complaint upon receipt of her Notice of Right to Sue.

## CLAIMS FOR RELIEF

## COUNT ONE:

## DISCRIMINATION BECAUSE OF DISABILITY IN VIOLATION OF SECTION 504 OF THE REHABILITATION ACT OF 1973 AND THE AMERICANS WITH DISABILITIES ACT

49.

Plaintiff incorporates herein by reference the factual statements set forth in the preceding paragraphs of this Complaint as if fully set forth herein.

50.

Defendant District is a "program or activity" which receives federal financial assistance, as defined by Section 504 of the Rehabilitation Act, as amended by the Grove City Amendments of 1986.

51.

Defendant District is a governmental entity as defined by Title II of the ADAAA.

52.

Defendant District is an employer as defined by Title I of the ADAAA and was Plaintiff's employer as defined therein.

53.

Plaintiff is an individual with a disability as defined in the Americans with

Disabilities Act and Section 504 of the Rehabilitation Act of 1973, in that she has a psychological impairment that substantially limits one or more major life activities; (B) has a record of such an impairment; and/or (C) was regarded by Defendant as having such an impairment

54.

Plaintiff was, with or without reasonable accommodation, capable of performing the essential functions of her job.

55.

Defendant District discriminated against Plaintiff based upon her disability in the following ways:

a. by requiring Plaintiff to be hospitalized under threat of termination and/or arrest;

b. by refusing to return Plaintiff to work after it received certification of her fitness for duty; and

c. by continuing to threaten Plaintiff with termination when she has sought to return to work.

56.

Persons employed by the District who had the authority and responsibility to investigate and take remedial action to end this discriminatory treatment had actual

knowledge of the discriminatory treatment directed toward Plaintiff, yet failed and refused to act to prevent or remedy such discrimination.

57.

Instead, Defendant District allowed Plaintiff to be the subject of disability discrimination.

58.

As a consequence of Defendant District's actions and failures to act, Plaintiff has suffered mental and emotional distress.

59.

Defendant District's conduct, as alleged herein, was undertaken with the intent to discriminate or with deliberate indifference to Plaintiff's federally protected right to be free from disability discrimination and harassment, such that Defendant District may be held liable pursuant to Section 504.

60.

Defendant District's actions cost Plaintiff sick leave and FMLA leave which she would not otherwise have been required to use, as well as the entitlement to continued employment.

61.

Plaintiff is entitled to the restoration of her accumulated leave balances from Defendant District.

62.

Plaintiff is entitled to recover from Defendant District compensatory damages, attorneys' and witness' fees, costs, and expenses of litigation.

63.

All conditions precedent to bringing this Count have been completed, performed and/or waived.

**COUNT TWO:**

**DISCRIMINATION BECAUSE OF PROTECTED ACTIVITY (RETALIATION) IN VIOLATION OF SECTION 504 OF THE REHABILITATION ACT OF 1973 AND THE AMERICANS WITH DISABILITIES ACT**

64.

Plaintiff incorporates herein by reference the factual statements set forth in the preceding paragraphs of this Complaint as if fully set forth herein.

65.

Defendant District is a "program or activity" which receives federal financial assistance, as defined by Section 504 of the Rehabilitation Act, as amended by the Grove City Amendments of 1986.

66.

Defendant District is a governmental entity as defined by Title II of the ADAAA.

67.

Defendant District is an employer as defined by Title I of the ADAAA and was Plaintiff's employer as defined therein.

68.

On numerous occasions, as set forth above, Plaintiff engaged in protected activity, including objecting to her forced hospitalization; seeking to return to work once she received a medical certification of her fitness for duty; and retaining counsel to represent her in enforcing her rights.

69.

Defendant District discriminated against Plaintiff based upon her protected activity (i.e., retaliatory discrimination):

a. by refusing to permit Plaintiff to return to work into her then available position;

b. by threatening to terminate Plaintiff because of her protected activities in seeking to return to work and retaining counsel.

70.

Persons employed by Defendant District who had the authority and responsibility to investigate and take remedial action to prevent or put a stop to the retaliatory actions set forth above had actual knowledge of the retaliatory treatment towards Plaintiff.

71.

Instead, Defendant District allowed Plaintiff to be the subject of discrimination because of her protected activity, in violation of Section 504 and Titles I and II of the Americans with Disabilities Act and 42 U.S.C. Section 12203.

72.

As a consequence of Defendant District's actions and failures to act, Plaintiff has suffered mental and emotional distress.

73.

Defendant District's conduct, as alleged herein, was undertaken with the intent to retaliate or with deliberate indifference to Plaintiff's federally protected right to be free from unlawful retaliation, such that Defendant District may be held liable pursuant to Section 504.

74.

Defendant District's actions cost Plaintiff back wages, health and other benefits, as well as the entitlement to continued employment.

75.

Plaintiff is entitled to recover from Defendant District her lost wages.

76.

Plaintiff is entitled to recover from Defendant District compensatory damages, attorneys' and witness' fees, costs, and expenses of litigation.

77.

All conditions precedent to bringing this Count have been completed, performed and/or waived.

**COUNT THREE:**

**INTERFERENCE AND RETALIATION IN VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT**

78.

Plaintiff incorporates herein by reference the preceding paragraphs of this Complaint as if fully set forth herein.

79.

Defendant is an employer as defined by the Family and Medical Leave Act, 29 U.S.C. Section 2601, et seq.

80.

Plaintiff was, at the time of her Family and Medical Leave in January of 2017 and thereafter, an eligible employee as defined by 29 U.S.C. Section 2611.

81.

As a result Defendant's actions in forcing Plaintiff to be hospitalized, Plaintiff was forced to take leave protected by the Family and Medical Leave Act.

82.

Upon receiving certification that Plaintiff was fit to return to work without restriction, Defendant did not reinstate Plaintiff, but instead threatened her with termination and forced her to remain on leave.

83.

Plaintiff is therefore entitled to declaratory and injunctive relief – as well as any lost wages and liquidated damages which ultimately flow from Defendant's actions, should Defendant follow through with its threat of termination – reinstating her to the position she had at the time of her leave.

84.

All conditions precedent to bringing this Count have been completed, performed and/or waived.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays as follows:

(a)   That this Court declare and adjudge Defendant District to have engaged in unlawful employment practices in violation of the ADAAA, and the Fourteenth Amendment;

(b)   That this Court reinstate Plaintiff to her employment; instate her into the position of Whitewater Middle School Art teacher and enjoin Defendant permanently from engaging in unlawful employment practices in violation of Section 504 and the ADA;

(c)   That this Court award compensatory damages to Plaintiff against Defendant under Section 504 and the ADA;

(d)   That this Court award back pay, liquidated damages, and injunctive and declaratory relief to Plaintiff against Defendant under the FMLA;

(e)   That Plaintiff have judgment against Defendant on all counts, in an amount to be determined at trial;

(f)   That Plaintiff receive an award of nominal damages;

(g)   That Plaintiff recover her attorneys' fees and costs from Defendant incurred in bringing this action;

(h)   That a jury trial be had as to all issues in this Complaint; and

(i)    For all such other and further relief as is deemed just and proper by this Court.

Respectfully submitted this 18th day of April, 2017.

/s/ *Matthew C. Billips*
Matthew C. Billips
Georgia Bar No. 057110
Orr, Brown and Billips, LLP
One Atlanta Plaza
950 East Paces Ferry Rd., Suite 2110
Atlanta, GA 30326
(770) 534-1980 t
(770) 536-5910 f
mbillips@orrbrownandbillips.com